The defendant's first objection presents the question whether the whole amount of the capital stock of a plank road company formed under the general act of 1847, must be subscribed before the company can be duly organized as a corporation. The 1st and 2d sections of the act in question (Laws of 1847, ch. 210,p. 216) furnish the answer, "that when stock to the amount of at least $500 per mile shall have been in good faith subscribed and five per cent paid thereon, the subscribers may organize themselves into a corporation." In their articles of association they are to specify the amount of the capital stock and the number of shares of which it shall consist; but it is nowhere provided that it must all be subscribed at the time of organization. The other provisions of the same sections confirm this construction. The articles are to be filed in the office of the secretary of state, and thereupon the corporate body comes into existence. They are not however to be filed until five per cent on the amount of the stock subscribed thereto shall have been paid in cash; nor until an affidavit of at least three directors named in the articles is annexed to or indorsed on the articles, stating that the amount of capital stock required by the first section has been subscribed, and that five per cent on the amount has been actually paid in. The amount of capital stock required by the first section we have already seen to be "at least $500 per mile of the road intended to be built." There is no expression in either section which favors the idea, that the whole amount of the capital stock must be subscribed before the corporation can be created. *Page 111 
The second objection is not well taken. The affidavit of the three directors does show not only that the amount subscribed to the articles is at least $500 per mile of road intended to be built, but also that five per cent on the whole amount subscribed had been in good faith paid in, in cash.
The foregoing objections were also made the grounds of a motion for a nonsuit, which, so far as relates to those objections, was properly denied.
Some other grounds for that motion were also stated. 1st. That there was not sufficient evidence of the corporate existence of the plaintiff; and 2d. That the proceedings of the company in making and giving notice of the calls sued for had not been such as to enable them to recover.
As to the first ground, the third section of the act provides that a copy of any articles of association filed in pursuance of the act, with a copy of the affidavit aforesaid indorsed thereon or annexed thereto, and certified to be a copy by the secretary of state or his deputy, shall in all courts and places be presumptive evidence of the incorporation of the company and of the facts therein stated. The legislature certainly has power over the law of evidence, and has as certainly exercised that power in this section, by making the production of the certified copies of the papers mentioned presumptive evidence of the incorporation of the company. That was sufficient evidence of the corporate existence of the plaintiff, until it should be rebutted by proof on the defendant's part.
As to the second ground before mentioned, it appears that the board of directors made the calls by resolution on the 8th of March, 1849; that the defendant was then one of the directors, was present and voted for the resolution. The resolution directed the treasurer to issue a circular letter setting forth the condition of the company as regards contracts made, c. and at the same time to give notice that calls for the payment of instalments on subscriptions for stock were thereby made to meet the contracts mentioned, and that the president sign the circular with the treasurer. The amount of the calls and the times of payment *Page 112 
were specified in the resolution. No evidence had been given when the objection under consideration was taken, of any other notice to the defendant, of these calls, than that which he had received by being present at the time of its adoption. The objection is raised upon § 39 of the act, which enacts that the directors of any company incorporated under this act may require payment of the sums subscribed to the capital stock, at such times and in such proportions and on such conditions as they shall see fit, under the penalty of the forfeiture of their stock and all previous payments thereon, and they shall give notice of the payments thus required, and of the place and time when and where the same are to be made, at least thirty days previous to the payment of the same, in one newspaper printed in each county in or through which their road is located, or by sending such notice to such stockbolder by mail, directed to him at his usual place of residence.
At a subsequent stage of the case, the plaintiffs gave in evidence printed notices of the calls signed by the president and treasurer, in pursuance of the foregoing resolution, which notices specified that the payments were to be made at the office of the company or remitted by mail to the treasurer, and also proved that the defendant volunteered to deliver notices to the persons along the line of the road, and that a package of said notices was sent and delivered to him for that purpose. If the proof was insufficient when the nonsuit was moved for, and the defect was afterwards supplied, a new trial would not be granted on account of an error thus afterwards obviated. Taking all the proof on the point together, I think it was shown that the defendant had sufficient notice of the calls, to charge him. Personal service of due notice is clearly more advantageous to the defendant, than either an advertisement in a newspaper or a notice sent by mail. That he received, in addition to the knowledge on the subject derived from his personal participation in the passage of the resolutions. The section does not require the place of payment to be specified in the call for payments but only in the notice of the calls, and the resolution was authority to the treasurer *Page 113 
and president to make the instalments payable at the office of the company, it specifying no different place. Upon the whole case, therefore, if notice to a director personally present and joining in making the call is necessary, the evidence shows that the defendant had sufficient notice to render him liable.
The defendant was properly precluded from showing that no notice was given of the first election of directors, and that some subscribers were not present at the election. He was present, signed the certificate which states that he and eight others had been duly elected by the subscribers to be directors for the first year and until others should be chosen, and swore in the affidavit filed in the secretary of state's office that he was a director. After this and after the company had gone into operation, he was not at liberty to controvert the fact of the regularity of its proceedings in becoming incorporated. If the question could be opened at all, it could, I think, only be inquired into upon quo warranto.
Whether the defendant, after a transfer of his shares in good faith to a solvent person, remained liable for calls made before the transfer but becoming payable afterwards, depends upon the statute and his agreement. His agreement was to pay to the company the amount of his subscription when called for by the directors. The statute does not as is sometimes the case authorize calls upon "stockholders" merely, but gives power to require payment of the sums subscribed, without specifying the persons from whom payment may be so required. I think that from subscribers they have a right to require payment according to their agreements, and that this liability can only be extinguished in those modes in which ordinary liabilities to pay money are extinguishable. In order to dispose of this case it is not however necessary to go so far; for here the calls were actually made before the transfer.
The remaining question in the case relates to the effect upon the defendant's liability of the construction by the company of a branch road under the act of 1849, (ch. 250.) That among other things provides that the directors of any plank road company *Page 114 
formed under the general law before mentioned may, with the written consent of the holders of two-thirds of the stock and of a majority of the inspectors, construct branches to their main line, or extend their main line or change the route of their road. This act took effect as a law, April 26th, 1849. Prior to that time the defendant had transferred his stock. He was not then a director or stockholder in the company. In July, 1849, the directors, under the act above mentioned determined to construct and commenced the construction of a branch road, and it was offered to be proved that neither the defendant nor Boyd his transferee had assented to the building of such branch road.
The first section of the act of 1847 subjects the corporations founded under its provisions to the 3d and 4th titles of chapter 18 of the first part of the revised statutes. One of these is that the charter of every corporation that shall hereafter be granted by the legislature shall be subject to alteration, suspension and repeal, in the discretion of the legislature. This condition is thereby engrafted upon the original constitution of companies formed under the act. The subsequent act was passed and operates under that reservation of power to the legislature. The corporate property is subject to that power, by reason of the assent to its exercise, implied from and by an organization under the act which reserves it. Every one who enters into such a company is aware of the reservation of the power and of the possibility of its exercise and trusts, as in many other matters he must trust, to the wisdom and justice of the legislature that this power will not be abused. In the Hartford and New HavenRailroad Co. v. Croswell, (5 Hill, 383,) and in the cases there cited as holding the same doctrine, the legislature had reserved no such power, and the acts there involved were held to violate the provision of the constitution of the United States, which forbids the enactment by a state of any law impairing the obligation of contracts. The persons who contract to take shares in a company under such an act, contract subject to the same reservation of power. The courts are bound to read their agreement with the legislative condition. They agree to take and *Page 115 
pay for the shares for which they subscribe, subject to the power of the legislature to alter or repeal the charter of the company, and it does not lie in their mouths to complain that the power has been exercised.
The judgment below should be affirmed.
Judgment affirmed.